UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAVAR LESTER BLUEFORD,

Plaintiff,

v.

KELLY GREEN, et al.,

Defendants.

Case No. 19-cv-00915-PJH

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 22

This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983.  His claims arise from his detention at Salinas Valley State Prison ("SVSP") and the denial of kosher meals.[1]  Defendants Frost and Green have a filed a motion for summary judgment citing administrative exhaustion and qualified immunity.  Plaintiff filed an opposition and defendants filed a reply.  The court has reviewed all of the filings and for the reasons set forth below, the motion for summary judgment is granted.

**MOTION FOR SUMMARY JUDGMENT**

**Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[1] All other claims were dismissed at screening and are no longer part of this action.  To the extent plaintiff wishes to raise new claims regarding a nonparty correctional officer who allegedly gave him tainted milk on the day of the deposition, he must file a new case containing those allegations.  Nor has plaintiff argued or shown that his deposition testimony is unreliable due to the allegedly tainted milk.

1    (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

2    reasonable jury to return a verdict for the nonmoving party.  *Id.*

3        The moving party for summary judgment bears the initial burden of identifying

4    those portions of the pleadings, discovery and affidavits which demonstrate the absence

5    of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

6    *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When

7    the moving party has met this burden of production, the nonmoving party must go beyond

8    the pleadings and, by its own affidavits or discovery, set forth specific facts showing that

9    there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough

10   evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

11       At summary judgment, the judge must view the evidence in the light most

12   favorable to the nonmoving party: if evidence produced by the moving party conflicts with

13   evidence produced by the nonmoving party, the judge must assume the truth of the

14   evidence set forth by the nonmoving party with respect to that fact.  *See Tolan v. Cotton*,

15   572 U.S. 650, 656-57 (2014); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

16       **Exhaustion**

17       "The PLRA [Prison Litigation Reform Act] mandates that inmates exhaust all

18   available administrative remedies before filing 'any suit challenging prison conditions,'

19   including, but not limited to, suits under § 1983."  *Albino v. Baca*, 747 F.3d 1162, 1171

20   (9th Cir. 2014) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  To the extent that the

21   evidence in the record permits, the appropriate procedural device for pretrial

22   determination of whether administrative remedies have been exhausted under the PLRA

23   is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

24   *Id.* at 1168.  The burden is on the defendant to prove that there was an available

25   administrative remedy that the plaintiff failed to exhaust.  *Id.* at 1172.  If the defendant

26   meets that burden, the burden shifts to the prisoner to present evidence showing that

27   there is something in his particular case that made the existing and generally available

28   administrative remedies effectively unavailable to him.  *Id.*  The ultimate burden of proof

United States District Court
Northern District of California

2

1   remains with the defendant, however.  *Id.*  If undisputed evidence viewed in the light most

2   favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary

3   judgment under Rule 56.  *Id.* at 1166.  But if material facts are disputed, summary

4   judgment should be denied and the district judge rather than a jury should determine the

5   facts in a preliminary proceeding.  *Id.*

6          An inmate "need not exhaust unavailable [remedies]."  *Ross v. Blake*, 136 S. Ct.

7   1850, 1858 (2016).  An administrative remedy is unavailable "when (despite what

8   regulations or guidance materials may promise) it operates as a simple dead end with

9   officers unable or consistently unwilling to provide any relief to aggrieved inmates'; or

10  when "an administrative scheme [is] so opaque that it becomes, practically speaking,

11  incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner

12  can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates

13  from taking advantage of a grievance process through machination, misrepresentation, or

14  intimidation."  *Id.* at 1859-60.

15         **Qualified Immunity**

16         The defense of qualified immunity protects "government officials . . . from liability

17  for civil damages insofar as their conduct does not violate clearly established statutory or

18  constitutional rights of which a reasonable person would have known."  *Harlow v.*

19  *Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the

20  plainly incompetent or those who knowingly violate the law.'"  *Saucier v. Katz*, 533 U.S.

21  194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can

22  have a reasonable, but mistaken, belief about the facts or about what the law requires in

23  any given situation.  *Id.* at 205.  A court considering a claim of qualified immunity must

24  determine whether the plaintiff has alleged the deprivation of an actual constitutional right

25  and whether such a right was clearly established such that it would be clear to a

26  reasonable officer that his conduct was unlawful in the situation he confronted.  *See*

27  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part

28  test that required determining a deprivation first and then deciding whether such right was

United States District Court
Northern District of California

1   clearly established, as required by *Saucier*).  The court may exercise its discretion in

2   deciding which prong to address first, in light of the particular circumstances of each

3   case.  *Pearson*, 555 U.S. at 236.

4   **Facts**

5   A review of the record indicates that the following facts are undisputed unless

6   otherwise noted:

7   For the relevant time period, the California Department of Corrections and

8   Rehabilitation ("CDCR") provided an administrative appeals process, in accordance with

9   Title 15 of the California Code of Regulations, that permitted an inmate to appeal any

10  departmental decision, action, condition, or policy that has a material adverse effect on

11  the inmate's health, safety, or welfare.  Cal. Code Regs. tit. 15, § 3084.1(a).  To resolve

12  their issues through the administrative appeals process, inmates must have submitted a

13  CDCR 602 Form, commonly referred to as an appeal form, describing the issue and

14  action requested.  Cal. Code Regs. tit. 15, § 3084.2(a).

15  The inmate appeal process consisted of three levels of appeal: (1) first-level

16  appeal, (2) second-level appeal to the institution head or designee, and (3) third-level

17  appeal to the Secretary of CDCR.  Cal. Code Regs. tit. 15, § 3084.7.  First- and second-

18  level appeals were handled by staff located at the respective institutions.  Cal. Code

19  Regs. tit. 15, § 3084.7.  Third-level non medical appeals were received and decided by

20  CDCR staff at the Office of Appeals.  Cal. Code Regs. tit. 15, § 3084.7(d).  A substantive

21  decision on an appeal at the third level exhausted CDCR's administrative remedies.

22  Motion for Summary Judgment ("MSJ"), Spaich Decl. ¶ 2.

23  On January 12, 2018, plaintiff submitted a Request for Religious Diet CDCR Form

24  3030 to request access to the kosher meal program as SVSP.  MSJ, Frost Decl. Ex. A.

25  In response, plaintiff was interviewed by a non-defendant chaplain.  *Id.*  The chaplain

26  asked if the mainline diet, which was pork free, was sufficient and plaintiff replied, "yes-

27  pork free".  *Id.* Ex. C.  The chaplain determined that the mainline diet was sufficient for

28  plaintiff and referred plaintiff's request to the Religious Review Committee.  *Id.* Ex. A.

United States District Court
Northern District of California

4

The Religious Review Committee determined that the mainline diet was sufficient and denied plaintiff's request.  *Id.* Exs. A, B, C.  Neither defendant was on the Religious Review Committee.  MSJ, Chang Decl., Blueford Depo. at 13-15.

On June 15, 2018, plaintiff submitted a CDCR Form 602 appeal regarding the denial of his kosher meal request.  *Id.* Ex. C.  The appeal was denied based on information from two interviews with plaintiff and a review of his canteen purchases.  *Id.* Defendant Green denied the first level appeal.  *Id.*  This was the extent of Green's involvement in this case.  MSJ, Chang Decl., Blueford Depo. at 13-15.

On August 3, 2018, plaintiff submitted his appeal to the second level.  *Id.* Ex. D. Plaintiff was interviewed by defendant Frost.  *Id.*  The second level appeal was denied because Frost stated that she discovered no new information that would warrant overturning the first level response or the decision of the Religious Review Committee. *Id.*  While Frost conducted the interview, a non-defendant denied the appeal.  *Id.*

During the second level interview, Frost contends that Plaintiff stated that he was converting and following his Jewish religion everyday and he had no new information to add.  MSJ, Frost Decl. Ex. D.  Plaintiff disputes this and states that Frost lied and he did add new information.  MSJ, Chang Decl., Blueford Depo. at 15-16.  Plaintiff states that he told her that, "anything I eat that comes over those trays, like the way they do the regular meals is unclean to me and also that, as my Jewish religion, that my milk, my milk can't be on my trays with my, with my with my meat, period.  My dairy and my meat makes me gag."  *Id.*  This interview was the extent of Frost's involvement in this case.  *Id.* at 13-15.

On September 24, 2018, plaintiff submitted his appeal to the third level.  Spaich Decl. Ex. A.  The appeal was labeled as SVSP-18-02511.  *Id.*  The appeal was rejected for being incomplete on December 10, 2018.  *Id.* Ex. B.  Plaintiff failed to sign and date the appeal and he failed to include the Request for Religious Diet CDCR Form 3030.  *Id.* Plaintiff did not resubmit the appeal even though he was advised that he could do so. Spaich Decl. ¶ 9; Ex. A.

**ANALYSIS**

**Exhaustion**

In this case defendants demonstrated that there was an available administrative remedy that plaintiff failed to exhaust.  Plaintiff has failed to meet his burden in showing that the administrative appeals process in general was unavailable and incapable of use or that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  It is undisputed that plaintiff's third level appeal was returned for being incomplete and while plaintiff had an opportunity to resubmit the appeal, he failed to take any action.

Plaintiff argues that he was unable to resubmit the appeal because he no longer had the required document, his form requesting a Kosher meal that was denied by prison officials.  The third level appeal was submitted on September 24, 2018.  Plaintiff states that in October 2018, he was placed on suicide watch and was then transferred to another prison and no longer had the document.  Other than this conclusory statement, plaintiff does not describe any effort to obtain the document or even if he inquired about the process to obtain the document in December 2018 when he needed to resubmit the appeal.  While plaintiff may have had difficulties due to his mental health, he was able to file this federal action on February 7, 2019.

In his deposition, plaintiff concedes that he was aware that he could resubmit the appeal.  MSJ, Chang Decl., Blueford Depo. at 41-42.  He states in the deposition that he did not resubmit the appeal because he thought prison officials were just delaying his ability to obtain kosher meals.  *Id.* at 42.  He also states that he did not ask anyone at his new prison how to obtain a copy of his prior Kosher request document to resubmit the appeal.  *Id.* at 41.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Woodford*, 548 U.S. at 84.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively

without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted).  Because there was an available administrative remedy and plaintiff failed to fully exhaust, summary judgment is granted for defendants.

**Qualified Immunity**

Assuming that plaintiff had fully exhausted the claim, a review of the case indicates that defendants are also entitled to qualified immunity.  It is undisputed that defendants were not involved in the Religious Review Committee's decision to deny plaintiff the Kosher meal program.  It is undisputed that Green's only involvement was denying plaintiff's first level inmate appeal.  It is undisputed that Frost's only involvement was interviewing plaintiff for the second level appeal, which was then denied by a non-defendant.  While the parties dispute what occurred in Frost's interview, even assuming plaintiff's facts are accurate, defendants are still entitled to qualified immunity.

If Frost failed to put plaintiff's statements in the interview report, it still had no bearing on the denial of the Kosher meal program which occurred before the Religious Review Committee.  Defendants only involvement were with the appeals.  There is no constitutional right to a prison administrative appeal or grievance system.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Plaintiff is unable to demonstrate the violation of a constitutional right.

It would also not be clear to a reasonable official that taking part in the inmate appeals process would be unlawful in the situation they confronted.  Nor has plaintiff shown that this is a situation where defendants were ratifying an unconstitutional act by others and the grievance process served as an automatic whitewash.  Plaintiff has not identified any caselaw that anyone involved in adjudicating grievances after the fact is per se potentially liable.  Defendants are entitled to qualified immunity.

**CONCLUSION**

1.  For the reasons set forth above, the motion for summary judgment (Docket No.

United States District Court
Northern District of California

22) is **GRANTED**.[2]

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 18, 2020

*/s/ Phyllis J. Hamilton*

PHYLLIS J. HAMILTON
United States District Judge

[2] The court will not address the Eleventh Amendment argument by defendants due to granting the motion for summary judgment with respect to exhaustion and qualified immunity.